### KNOX v. MOORE.

1. A GENERAL EXCEPTION not considered.
2. DECREE—CORRECTION.—A Circuit Judge, after filing his decree in a cause, may make correction of any inadvertence or mistake in his decree, whereby he has stated a conclusion different from that which was intended by him.
3. EXCEPTIONS alleging error on the part of the Circuit Judge in overruling exceptions to the probate judge's decree without any statement of such overruled exceptions, not considered.
4. FINDINGS OF FACT by the Circuit Judge on appeal from a decree of the probate judge sustained, such findings not being unsupported by evidence, nor opposed to its manifest weight.
5. SLAVE MARRIAGES—LEGITIMIZING STATUTES.—The law of this State never recognized marriages between slaves. Where two slaves lived together as man and wife for some years, and the man was then married to another slave woman, with whom he lived until his death, many years after their emancipation, the second wife was his lawful widow, and the children of

his first wife, acknowledged by him as his children, were his lawful children, under the statutory declaration contained in the act of 1865, 13 Stat., 291. Nor could he have abandoned his second wife and made the first wife his lawful wife under that act without a ceremony of remarriage.

6.  IBID.—IBID.—HOMESTEAD—DOWER.—The first wife not being the lawful widow, she was not entitled to homestead and dower in the lands of the deceased.

7.  DECREE—EXCEPTION.—A matter considered by the Circuit Judge cannot be made a ground of exception because not referred to in the probate or Circuit decree, especially when it is a matter of no practical consequence.

Before NORTON, J., Abbeville, June, 1893.

Action by John N. Knox, as administrator of Thornton Moore, deceased, against Viney Moore, Rindy Moore, and others. On July 12, the Circuit Judge filed his decree. On July 20, he filed the following supplemental decree: "This was an appeal from the decree of the Probate Court of Abbeville County, heard by me at June Term, 1893. In my decree therein, dated July 7, 1893, and filed with the clerk of court, there appears a clerical error that may lead to a misconstruction of what I intended to determine. It should be corrected. I adjudged in said decree that the 7th ground of appeal be sustained, and that the defendant, Frank Moore, be excluded from any share in the estate of Thornton Moore, deceased. This ground of appeal reviews two findings of the Probate Court: (1) That Viney Moore was the legal wife of Thornton Moore, and (2) that Frank Moore, one of his illegitimate sons, was entitled to inherit from Thornton Moore. I was under the impression that this ground of appeal reviewed only the second finding stated above, and I intended by my decree to modify the decree of the Probate Court only so far as it affected the interests of Frank Moore. I was and am perfectly satisfied with the first finding referred to above, and with the entire decree, except so far as it holds that Frank Moore was entitled to inherit from Thornton; this part of the decree, and only this, I intended to reverse. It is, therefore, ordered, that W. R. Bullock, clerk of court for Abbeville County, be and he is hereby authorized and directed, immediately upon the receipt and filing of this order, to amend my said decree by inserting

between the word 'sustained' on the seventh line thereof and the word 'and' on the same line the following clause: 'In so far only as it relates to Frank Moore and his interest in the estate of Thornton Moore.' So that said decree shall read, after stating the title of the cause, &c., as follows: On hearing the pleadings, evidence, judgment of the probate judge, exceptions on appeal therefrom, and argument of counsel, it is ordered and adjudged, that the 7th ground of appeal be sustained in so far only as it relates to Frank Moore and his interest in the estate of Thornton Moore, and that the defendant, Frank Moore, be excluded from any share in the estate of Thornton Moore, deceased. That in all other respects the judgment of the Probate Court be affirmed, and that the action be remanded to that court for such further proceedings therein as may be proper." The clerk of the court made the interlineation directed by the above order.

*Messrs. Graydon & Graydon*, for appellant.

*Messrs. Perrin & Oothran*, contra.

April 25, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. In the year 1848, Thornton Moore and Rindy Moore, while both were slaves, lived together as husband and wife. Children were the issue of that relation. On the ground of alleged infidelity, Thornton Moore refused to live with the said Rindy Moore some time about the year 1857, and in the year 1863 he married, according to the manner of slaves, the defendant, Viney Moore, with whom he lived until the passage by the legislature of this State of the act to establish and regulate the domestic relations of persons of color, and to amend the law in relation to paupers and vagrancy. 13 Stat., 291. Just after the passage of this law, not earlier than 25th December, 1865, but about that time, Thornton Moore sought out the said Rindy Moore, and lodged her at Robert Hall's, where he rented a farm and worked it during the year 1866, but he continued to visit Viney Moore all this time as his wife. However, in the fall of the year 1866, he moved,

"bag and baggage," to Viney Moore, and lived with her as his wife until his death, which occurred in 1891.

When he died he was seized and possessed of a small tract of land, and an inconsiderable personal estate. Administration upon his personal effects was duly granted by the Probate Court of Abbeville County to the plaintiff, John N. Knox. His personal estate proving insufficient for the payment of his debts, his administrator brought an action against Rindy Moore, who claimed to be his widow, and Viney Moore, who also claimed to be his widow, and the children begotten by him of Rindy Moore, to sell the land to pay debts. The question as to who was entitled, in law, to be considered the widow, was considered. The judgment of the Probate Court was in favor of Viney Moore, and of the children born to Thornton Moore by Rindy Moore, as the heirs at law and next of kin of said Thornton, now deceased. From this judgment, Rindy Moore appealed to the Circuit Court for Abbeville. The judgment of that court affirmed that of the Probate Court, except that the defendant, Frank Moore, was excluded from the benefit thereof.

Rindy Moore now appeals from that judgment on the following grounds, namely: 1. That his honor, Judge Norton, erred in not finding, under the act of 1865, that Thornton Moore made his election and chose Rindy as his wife, and that she is the lawful widow of Thornton Moore. 2. That he erred in holding that the act of 1865 applies to a case where a slave was lawfully married to another slave before the war. 3. That he erred in not holding that the evidence clearly shows that prior to the first day of April, 1866, Thornton Moore chose Rindy as his wife under the terms of said act, lived with her as his wife during the year 1866, acknowledged her as his wife, and that the general reputation was that she was his wife. 4. That he erred in holding that the evidence showed that Viney Moore lived with Thornton Moore as his wife from the time of the alleged marriage, in 1863, up to the time of his death, in 1891, when the evidence is clear and undisputed that in the latter part of 1865, or the first of the year 1866, Thornton took Rindy as his wife and lived with her, and acknowledged her as such

during almost the entire year 1866. 5. That he erred in not holding that the alleged marriage with Viney, in 1863, was not even a moral marriage, Rindy being alive at that time, and the person who attempted to perform the ceremony between Thornton and Viney not being competent to perform the marriage ceremony. 6. That he erred in not holding that Rindy was entitled to a homestead in said land, except as to the mortgage debt. 7. That he erred in holding that Viney was the lawful wife of Thornton Moore, after having held that Rindy was the moral wife of Thornton, her marriage having been prior in point of time, and the evidence showing that, after the act of 1865, Thornton recognized his moral as well as his legal liability, and took Rindy as his wife under the terms of said act. 8. That he erred in not holding that Rindy was the lawful wife of Thornton, although he affirmed the decree of the Probate Court which adjudged that two of Rindy's children, born long after the war was ended, were the lawful children of Thornton. 9. That he erred in not finding from the clear and undisputed testimony that Thornton lived with Rindy and acknowledged her as his wife during the year 1866, the probate judge having failed in his decree to make any reference whatsoever to that fact, and the said Rindy Moore being prejudiced by the failure of the probate judge and of the Circuit Judge to make any finding upon that question, inasmuch as she is entitled to the opinion of the court upon the question of law arising out of that fact. 10. That he erred in not, at least, ordering a new trial, in order that the said Rindy Moore might have the benefit of an express finding of fact upon that point in the case, and go before the court untrammelled by the failure of the probate judge to find in her favor an important and undisputed fact. 11. That he erred in not reversing the decree of the Probate Court upon the exceptions taken by the said Rindy Moore thereto. 12. Because it was error in his honor, Judge Norton, more than two weeks after the date of his decree, and more than a week after the date it was filed in the clerk's office, under the claim of correcting a clerical error in said decree, to amend his decree by inserting words which were entirely inconsistent therewith, and which made a new and different de-

cree from the first one filed, there being no latent ambiguity in said first decree, and his honor having no right to amend and change a decree after it has been duly filed with the clerk of the court. 13. Because the said decree of his honor is in all respects contrary to the law of the case, and is not supported by the testimony adduced at the trial.

1. The 13th exception is too general and vague; it must be overruled.

The 12th exception, while complaining of an alteration in the decree made by the Circuit Judge after the same was filed with the clerk, fails to specify wherein the change was one of substance and not the correction of a clerical error. We cannot assume such a fact. All the presumptions are against it. The Circuit Judge points out exactly how the clerical error occurred. It is always desirable that the decrees of the Circuit Court should present the intended conclusions of law and fact reached by that court; and where, from inadvertence or mistake, a different result therein is made to appear, the Circuit Judge should be allowed to correct such clerical mistake. This court, in the case of *Chafee & Co.* v. *Rainey*, 21 S. C., 17, sustained the right of the Circuit Judge to make such a correction. And that case was very similar to this. Judge Norton has exercised the right then recognized in the Circuit Judge, and in doing so, he committed no error.

The 11th exception, referring, as it does, to exceptions to the decree of the probate judge without stating such exceptions, cannot be considered by us in this form. The exception must be overruled.

So far as exceptions 1, 3, 4, 9, and 10 relate to findings of fact by the Circuit Judge, they are overruled, under the well recognized rule, that no findings of fact by a Circuit Judge will be overruled unless unsupported by any evidence, or against the manifest weight of the testimony.

The other exceptions, however, raise questions of law which we will now consider. When the former slave population of this State became free men, the serious question of their domestic relations, involving as those relations did the matter of marriage amongst them and the legitimacy of

their children, confronted the legislature. It had been established in law that the condition of slavery excluded the power of slaves to contract and be contracted with. Hence marriage, which was a matter of contract, could not be legally imputed to them; and the legitimacy of the offspring of the man and the woman, while slaves, depended upon the marriage of their respective parents. The legislature attempted to provide for these matters. The act of 1865, whose title we have heretofore given, by its first section established marriage for these people not as to *the future* (for when the negro race were made citizens, of course all laws in existence were applicable to their prospective lives, as such laws affected the white race), but these laws were made *retrospective.* We find in the second section of this act of 1865, that it is provided that, "those who now live as such [husband and wife] are declared to be husband and wife." Applying this principle of the law to the case at bar, it is decisive of the present contention between Viney and Rindy as to which of them was the wife of Thornton Moore; for the testimony is irresistible that Thornton and Viney, on and after the 21st December, 1865, having been married according to the forms obtaining with their race, and with the consent of their respective owners, in the year 1863, lived together as husband and wife until his death. Under the decisions of *Davenport* v. *Caldwell*, 10 S. C., 317; *State* v. *Whaley*, 10 *Id.*, 500; and *Clement* v. *Riley*, 33 *Id.*, 66, this is the view that must be taken of the relations of these parties, viz: thereby in law they became husband and wife. The acts of 1866 and of 1872, bearing on the subject of the domestic relations of these people, were considered in the cases just cited, and were declared to have the effect announced in *Davenport* v. *Caldwell, supra*, and *State* v. *Whaley, supra.*

The seeming inconsistency involved in holding that certain of Rindy's children could inherit as legitimate heirs at law of Thornton, although no marriage subsisted between Thornton and Rindy, their mother, will disappear when it is remembered that the legal status of such children did not arise in law from the fact of being born to Thornton and Rindy while slaves, but really such legal status was the creature of the statute. For in

the 4th section of the act of 1865, it is declared: "Every colored child *heretofore* born is declared to be the legitimate child of his mother and also of his colored father, *if he is acknowledged by such father.*" When Thornton Moore, therefore, acknowledged certain of the children borne to him by Rindy while they were slaves, to be his chidren, he thereby made such children his legal heirs under the statute. Before leaving this subject, however, it ought to be remarked that we have not been able to see the pertinency of the claim that Thornton Moore, by having taken Rindy after the 25th December, 1865, or within the early part of January, 1866, and having lived with her, thereby fulfilled the requirements of section 3 of the act of 1865, which allowed a right of choice to a husband who had two or more reputed wives as to which one he adopted as his wife, provided such choice was made prior to 1st April, 1866; for that section especially enjoined as a part thereof that a new marriage ceremony should be solomnized, and section 6 provided the persons who should perform this marriage ceremony to be "a clergyman, the district judge, a magistrate, or any judicial officer." There is no evidence that any such marriage ceremony was performed between Thornton and Rindy after the 21st December, 1865.

Having determined the foregoing propositions as we have, of course the exceptions to the decree of the Circuit Judge for failing to allow Rindy homestead or dower in Thornton's lands must be dismissed.

We are not able to see that the Circuit Judge committed any error as pointed out in the ninth exception. If the Circuit Judge considered the matter there referred to, although the probate judge made no direct reference thereto in his decree, it cannot be said that it was not considered. Really, however, we are unable to recognize any practical benefit that could accrue to the appellant from this matter, even if it had been considered by the probate judge.

All other exceptions not specifically named are intended to be included in the foregoing conclusions, and are, therefore, overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.