## 6565

## WATSON v. ELLERBE.

HEIR AT LAW—ILLEGITIMATE CHILDREN—NEGROES.—A child of a negro slave woman, previously married to another, to whom a negro slave was formally married prior to 1860, and who was acknowledged by him as his child, cannot inherit his property as against the children of a woman to whom he was afterwards formally married and with whom he lived as man and wife in December, 1865.

Before GAGE, J., Florence, July, 1906. Affirmed.

Petition in probate court by Katy Watson for letters of administration upon estate of Richard Humbert. From probate decree, protestant Saphronia Ellerbe appealed to Circuit Court, and from affirmance of probate judgment she appeals to this Court.

*Messrs. Galletly & Ragsdale,* for appellant. No argument furnished Reporter.

*Mr. Walter H. Wells,* contra, cites: 10 S. C., 317; 41 S. C., 355; 63 S. C., 219; 61 S. C., 411.

June 26, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. On June 15th, 1905, Richard Humbert, an inhabitant of Florence County, died intestate leaving a small personal estate. Thereupon, on June the 20th, 1905, Katy Watson filed a petition in the probate court of said county for letters of administration, alleging that Humbert left surviving him three children, the petitioner herein, who is the eldest, Elizabeth Books, and William Humbert. On the return day of the citation, Saphronia Ellerbe filed a protest against granting the petition, in which she claimed that she was the oldest legitimate child of Humbert, and demanded that she be allowed to administer on his estate. After hearing the testimony *pro* and *con* the probate

judge decided that Saphronia was an illegitimate child and that the petition should be granted.   Thereafter, protestant appealed to the Circuit Court assigning error on the part of the probate court in holding her to be illegitimate, and not entitled to letters of administration.   The Circuit Court affirmed the judgment of the court below and the protestant now comes to this Court for relief.

The facts according to the preponderance of the evidence, are as follows: Richard Humbert, a slave of Col. Charles, some four or five years before the war, married Virginia Eggleton, a slave belonging to Mr. Gibson.   Virginia had a short time before in the presence of many witnesses married Arthur Eggleton, who was still living at the time of the second marriage.   Humbert and Virginia lived together for some time when Virginia was moved from Darlington to the plantation of Mr. Gibson, some distance away.   Here the protestant was born.   Later, on account of alleged infidelity, Humbert deserted Virginia and married Lavinia, a slave of Mr. Woods, and the mother of the petitioner herein. The date of this marriage is uncertain, but it was evidently some time near the beginning of the war.   Equally conflicting is the evidence as to whether Humbert and Lavinia lived together as man and wife continually after their marriage. The preponderance of the evidence seems to be that Humbert was absent at times, and perhaps for long periods, but he all the time recognized Lavinia as his wife.   The assertion of several witnesses and the birth of three children between the years 1861 and 1867 substantiate this fact.   In the meantime Virginia had given birth to several other children from as many different men, and had returned to Arthur Eggleton, whom she recognized as her husband as long as he lived.   Shortly after the war, Humbert moved to Florence, where he lived with Lavinia and their three children up to the time of Lavinia's death.   We are of the opinion that Saphronia, also, was a member of his household here and was recognized by him as his child.

The question, therefore, arises did this recognition under the act of 1865, 13 Stat., 259, make Saphronia a legitimate daughter and entitle her to inherit as an heir of Humbert? Section 4 of the act provides: "Every colored child heretofore born is declared to be the legitimate child of his mother and also of his colored father, if he is acknowledged by such a father." This section was considered and construed in the case of *Roberson* v. *McCauley*, 61 S. C., 416, 39 S. E., 570, and we are satisfied with the conclusion there reached, that it referred only to children of moral marriages. The act of 1872, 15 Stat., 183, after declaring certain persons to be husband and wife, provides: "All of their children shall be deemed legitimate, whether born before or after the passage of this act; and when the parties have ceased to cohabit before the passage of this act, in consequence of the death of the woman, or from other cause, all the children of the woman recognized by the man to be his, shall be deemed legitimate: *Provided, however,* that no provision of this act shall be deemed to extend to persons who have agreed to live in concubinage after their emancipation." Therefore, to entitle Saphronia to inherit under either act it must be shown that she was the fruit of a moral marriage, and that the relation existing between her parents was not mere concubinage. A discussion as to what was meant by moral marriages in this act would be a work of supererogation. The cases of *Davenport* v. *Caldwell*, 10 S. C., 317; *State* v. *Whaley*, 10 S. C., 500; *Clement* v. *Riley*, 33 S. C., 66, 11 S. E., 699; *Knox* v. *Moore*, 41 S. C., 355, 19 S. E., 683, and *Roberson* v. *McCauley, supra,* fully settle this question. Suffice it to say here that it was a term applied to a relation between slaves who, although they had no power to make the marriage contract, yet came together and agreed to live as man and wife. The essence of such an agreement was that it be *bona fide* and that the parties act in accordance with it. Otherwise a moral marriage did not exist. The formal agreement in itself could not constitute moral marriage, for if that were so, all line of demarcation between

such marriage and concubinage would disappear.  An agree-
ment and cohabitation for a week, a month, or a year
would become a moral marriage.  There must be that moral
intention to assume the duties incident to marriage.  The
legislature had in mind only those cases in which there
would have been a legal marriage had the parties the
power to contract.  Did such a relation exist between Hum-
bert and Virginia?  As found above, Virginia a short time
before her marriage to Humbert had married Eggleton, and
shortly after the second marriage she had relations with two
other men.  It does not appear whether there was an agree-
ment or form of marriage in the last two cases, but they
tend to throw light on her connection with Humbert.  From
the evidence we cannot impute to her the intention at the
time of her marriage to become the *bona fide* wife of Hum-
bert.  She was merely an adventuress seeking new homes·
and new husbands as her passions prompted.  There is
nothing in her conduct that would convey to the ordinary
mind that she had any idea of the solemnity of the ceremony
in which she was a principal participant or of the duties she
was taking upon herself.  In fact, it does not appear that
even she recognized the relation of man and wife as existing
between herself and Humbert, for she went back to Eggleton
and continued to bear his name, thus showing that to her he
was her husband.  Saphronia, therefore, is not entitled to
share in Humbert's property as his heir.

As stated, the evidence shows that Lavinia and Humbert
were, at the time of the passage of the acts above referred
to, living together and continued so to do until the death of
Lavinia some years later.  Therefore, according to the acts
they were man and wife, and their children legitimate.  The
protestant, however, alleges that the Circuit Court erred in
finding that legal marriage existed between them.  This was
no error, for immediately upon the passage of the acts of
1865 and 1872 they did become legally married.  Even
if there had been error in this finding, it would have been

harmless, and no cause for reversal. The Court below, therefore, must be sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *did not sit in this case.*